APPEAL OF MEAD CONSTRUCTION CO.

Docket No. 4843.    Submitted November 5, 1925.    Decided January 26, 1926.

Amounts withheld by a city from a paving contractor out of the contract price as a deposit to assure proper repairs during a specified period are income under the accrual system.

*Merle Walker, Esq.*, and *Albert H. Winter, C. P. A.*, for the taxpayer.

*A. H. Fast, Esq.*, for the Commissioner.

Before STERNHAGEN, LANSDON, and ARUNDELL.

The Commissioner determined a deficiency of $5,212.64 in income and profits tax for 1922, from which the taxpayer appeals. The issue depends upon whether the amount of a so-called deposit held by the city in connection with the performance of contracts for public work is within the taxpayer's income.

## FINDINGS OF FACT.

The taxpayer is an Indiana corporation engaged, during the taxable year, in the performance of certain contracts for paving streets of the City of Indianapolis. It kept its books of account on the accrual basis.

The contracts were awarded on competitive bids, the amount of which had been computed in accordance with the requirements of the city so as to include an amount to cover the guaranteed maintenance of the paving for a specified period. In 1922, the guaranty period was three years, but theretofore it had been five years. These contracts and all similar contracts contained the provisions of general specifications prescribed by the city, among which, together with others not here important, were the following:

36. Guarantee. The work shall be done in such a substantial manner that no repairs shall be required for a period of three (3) years . . . from the time of approval of the final assessment roll by the Board of Public Works. . . . The said Contractor shall keep said works in good repair during the time of the guarantee period. . . . The Contractor warrants his workmanship and all materials used in the work and agrees that during the guarantee period specified he will at his own expense make all repairs which may become necessary by reason of improper workmanship or defective materials. . . . In case such repairs become necessary the city shall give written notice to the Contractor to make the same and in case of failure of the Contractor to commence such repairs within thirty (30) days after such notice is received, the city may make such repairs either by its own employes or by independent contract, and may thereupon recover from the Contractor and his sureties the reasonable cost of the repairs so made. . . .

37. Deposit of improvement bonds. As an additional guarantee that the Contractor will properly repair and maintain the improvement specified for the guarantee period, as above provided, the Contractor will be required to deposit with the City Controller improvement bonds of the City of Indianapolis, United States Government Bonds or cash in a sum equal to ten (10) per cent of the cost of said improvement, which sums shall be and constitute a Repair Guarantee Fund in the hands of the City for the purpose of securing the repair of said improvement, for the guarantee period by the Contractor to the satisfaction of the Board of Public Works, and also for the purpose of indemnifying the City for any expenditures on account of damages or injuries to persons or property occurring during the progress of the work of the guarantee period. The face value of such bonds shall at no time during the guarantee period be decreased to an amount less than ten (10) per cent of the cost of said improvement, but the Contractor will be permitted to receive and receipt, from time to time, for all maturing interest coupons. Subject to the above conditions, at the end of the guarantee period, all bonds so deposited, with all unpaid coupons, shall be turned over to the Contractor or his assigns.

\*      \*      \*      \*      \*      \*      \*

45. Bond. Within five (5) days after the successful bidder shall have been notified of the acceptance of his bid he shall file with the Board of Public Works an approved bond in an amount not less than fifty (50) per cent of

the estimated contract price, but in no case shall a bond be accepted for less than five hundred ($500.00) dollars conditioned to guarantee the full and complete performance of his work according to the terms of the contract, and that he will comply with and carry out all the terms and provisions of said contract, said bond to be in full force and effect up to and including the final acceptance of the work, or the approval of the final assessment roll, after which it will cease to be operative, subject to the following conditions, to-wit:

(a) Before the Contractor shall be released from his bond he shall file, with the City Controller, bonds or cash as provided by Section 38 [37] of the General Specifications.

The general practice as to contracts such as those here in question is governed by a statute of Indiana, called the Barrett Law. After the work is completed the assessment roll is prepared. Property owners have thirty days to elect to pay the assessment in cash or in ten payments. Bonds are then prepared in a series payable annually from one to ten years. These bonds are payable to the contractor or bearer solely out of the fund derived by the city from payments made by the assessed property owners. The bonds may not be paid out of the city's general fund and this is never done. The bonds are issued to the contractor to the amount of 90 per cent of the contract price. The remaining 10 per cent is withheld by the controller as the deposit provided by section 37 of the general specifications above quoted. Sometimes the contractor receives cash, but not usually. The taxpayer may substitute cash or other acceptable bonds as his deposit and in some instances the taxpayer substituted Liberty bonds. In no case have bonds been issued to the taxpayer or cash paid in the full amount of the contract price, in the first instance; the 10 per cent deposit has always been withheld until the expiration of the guarantee period. In 1922 the amount withheld was $46,133.02.

The taxpayer, in its accounts, set up a "maintenance reserve" of the amounts withheld on deposit by the city, and this amount was not included in its taxable net income. The Commissioner included it and determined the deficiency.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

STERNHAGEN : By the terms of the contract the taxpayer is required to deposit Indianapolis improvement bonds—not necessarily those covering the contract work—or United States bonds, or cash, as a fund to guarantee the proper maintenance and repair of the improvement. In some instances the taxpayer deposited United States Liberty bonds, but usually the city withheld improvement bonds or

cash received from the assessment of the improvement. We have already held that if the taxpayer, out of its contract price, set aside a reserve for the performance of its obligation to maintain, this would not reduce its taxable net income, either on the cash basis, *Consolidated Asphalt Co.*, 1 B. T. A. 79, or on the accrual basis, *Uvalde Company*, 1 B. T. A. 932. See also *Chapin Construction Co.*, 3 B. T. A. 25; *Thomas Cronin Co.* v. *Lewellyn*, 9 Fed. (2d) 974. If, in the present appeal, the contractor in fact received the contract price and in fact transferred cash or bonds to the city for deposit as required, the contract price would have been income notwithstanding the deposit or pledge for proper maintenance. But the procedure was simplified, and the city retained the deposit fund in the first instance. The fact that it did so with the heavy hand of its municipal power does not change the taxpayer's contractual right to the full compensation and its obligation to make deposit. The legal effect is quite the same. And this is especially so under the accrual system adopted by the taxpayer, by which it elected to determine its income not by actual receipts but by receivables. The deposit fund is no more the subject of deduction as " maintenance reserve " when it is in the possession of the city than when it is retained by the taxpayer and set up on its books, as in the appeals cited.